HOBSON, Justice.
In the second appearance of this litigation, see Lewis v. Lewis, 66 So.2d 260, plaintiff, Ben Lewis, here seeks to appeal from a summary decree in favor of defendant, Art Lewis. We have decided to treat the appeal as a petition for certiorari, and for convenience will continue to refer to the parties as plaintiff and defendant.
In entering the summary decree now before us, the chancellor made certain findings, which state the facts of the case succinctly and we therefore quote from them:
“The Plaintiff, Ben Lewis and defendant, Art Lewis, are brothers. Plaintiff seeks an accounting from the defendant, basing the same on the allegations that the plaintiff and the defendant entered into a partnership agreement many years ago and that said partnership continued until the filing of the Bill in this cause. The defendant does not dispute the fact that the partnership existed. In fact, it is conclusively established by all the evidence that they were 'partners in everything/ and that there was no special agreement as to any particular venture or enterprise, but a single indivisible agreement which included all ventures, enterprises or businesses in which either or both became interested in (sic) during the period that agreement existed. Although the testimony of both plaintiff and defendant and all other witnesses establishes the partnership agreement as stated, that conclusion is confirmed by a stipulation filed in the record signed by both plaintiff and defendant which provided in part:
“ ‘2. That both parties shall furnish all records and documents and make a full and complete disclosure as to all partnership assets at the hearing before the Commissioner, including documents, check and bank accounts, canceled checks, and all other papers connected with any property held by both plaintiff and defendant, whether in the individual name, joint names, or in the names of corporations or other entities; and they agree to voluntarily join in every request that either party may make to any bank or other public institution connected with the matters in inquiry, for photostatic copies or original records which may be in the possession or control of such banks, public institutions or other persons.
“ ‘3. Both parties admit the existence of the partnership between them from the time that the first business concession commenced operation in the year 1927 or 1928, down to the date of the filing of this suit.
“‘4. Both parties admit that, irrespective of the mode or manner of acquiring, holding, or retaining title to any and all enterprises entered into by them with partnership funds, the same were held for the mutual benefit of both parties, as equal partners.
“ ‘5. The Defendant admits that he received the money for the payment of the balance due on the mortgage on the Monte Carlo hotel, which was also partnership assets.’
“The defendant contends, and the proof shows that Plaintiff and Defendant as partners, under the partnership agreement between them engaged in both legal and illegal enterprises; that plaintiff was in active charge of gambling enterprises conducted on behalf of the partnership, although it is ad *74 mitted by both parties that both plaintiff and defendant were active to some extent in that part of the gambling enterprises carried on under the name of the Palm Club, and other gambling enterprises in Dade County, Florida. Plaintiff does not seriously dispute this fact; indeed, his consistent refusal to testify about any of such matters makes the .other proof upon that issue conclusive.
“Incidently, in passing, it may be observed that Plaintiff’s claim of privilege cannot be sustained in the light of Section 932.29, F.S.A. as construed in Hagerty v. Southern Bell Telephone & Telegraph Co., 145 Fla. 51, 199 So. 570, nor for the same reason can the right of plaintiff’s counsel to prevent any inquiry into the gambling enterprises of plaintiff during the taking of the depositions before Howard I. Brenner, as Commissioner be sustained. The refusal of plaintiff to testify or permit any other witnesses to testify as to his gambling enterprises without any legal justification for that refusal leaves no doubt that he was engaged in various gambling enterprises, including a gambling concession at the Monte Carlo Hotel, the basis for the claim asserted in Paragraph Six of his Bill of Complaint. It appears that the profits from the operation of the various businesses operated by defendant, in the State of Virginia prior to the year 1940, with the exception of properties in the name of Art Holding Company, have been brought to Florida and invested in various properties and enterprises vested and conducted in the name of various corporations in which both plaintiff and defendant are stockholders and officers, and that funds derived from the operation of those corporations as well as part of the funds derived from enterprises conducted in the North which were brought to Florida have been mingled with funds derived from the operation of gambling enterprises by the plaintiff, Ben Lewis, and that those funds were accessible at all times, not only to the defendant, Art Lewis, but to the plaintiff, Ben Lewis, and that it would be and is impossible to segregate the legitimate from the illegitimate operations in this case, except as to dividends paid to either of the parties by any of the corporations which owned and operated the various enterprises in Florida. This being a partnership suit, and not a stockholders action, plaintiff cannot be entitled to a general accounting of businesses conducted by corporations.”
The chancellor went on to grant defendant’s motion for summary final decree except for dividends from certain named corporations as to which an accounting was ordered.
Plaintiff first contends that the chancellor erred in granting the motion because the record shows genuine issues of material fact. We have examined the record at length with this point in mind, and we cannot agree. As we said in Boyer v. Dye, Fla., 51 So.2d 727, 728, the accepted practice in summary proceedings is to “accord the chancellor reasonable latitude in determining whether there is in fact a case to be tried.” We are not persuaded that this “reasonable latitude” has been exceeded in the present case, and we accept the findings as above quoted. It was singularly appropriate in this case for the chancellor to “pierce the shield of the pleadings in search of a genuine issue”, Boyer v. Dye, supra, and his findings are abundantly supported by the record. And it was not error to grant defendant’s motion for summary decree before disposition was made of plaintiff’s motion to strike portions of the amended answer and cross-bill. Not only is there no showing that this motion was ever noticed for hearing, but the decision first to hear and decide defendant’s motion for summary decree lay well within the ambit of the court’s inherent power to control its docket.
Plaintiff places great stress upon a controverting affidavit in which he denied that defendant was his partner in any en *75 terprise which plaintiff entered “on his own behalf after he discontinued giving personal service to the Art Lewis Shows some time in the year 1934.” He overlooks, however, the fact that plaintiff testified unequivocally more than once, on deposition, that the partnership agreement embraced all activities in which either partner engaged. This is not, as plaintiff appears to suggest, a case where the court has attempted to pass upon the credibility of witnesses from a cold record (see Williams v. Board of Public Instruction, Fla., 61 So.2d 493, relied upon by plaintiff, but note that it was an action at law where jury trial had been demanded) but instead it is one where the chancellor has accepted an admission at its face value, as he was entitled to do. See Day v. Norman, Fla., 42 So.2d 273. It appears that the plaintiff has attempted to create issues, by waiting until the defendant had assembled the facts of the case in support of his motion for summary decree and then controverting them in disregard of admissions which he, the plaintiff, had made.
It is plain from the record that the plaintiff has sought assiduously to avoid examination of his owh transactions while attempting to scrutinize those of his brother, although the partnership agreement covered both. Under such an agreement it would be impossible to strike a balance between the parties without considering all commercial activity in which either engaged. There is no offer to do equity here. Early in the litigation, the chancellor, at plaintiff’s instance, limited the scope of plaintiff’s deposition to issues raised by the pleadings and specifically ruled in his order that examination concerning an organization known as the “Palm Club” was not germane to the issues so raised. Plaintiff seems to take the position that this order permanently eliminated the “Palm Club” from the case. But after the order of the court was entered further pleadings were filed, which enlarged the issues. The extensive depositions which were taken established beyond doubt that the “Palm Club” was a gambling establishment in which the plaintiff had an interest, and under the-partnership agreement found to exist it was not error, nor was it inconsistent, for the chancellor to consider the “Palm Club”' transaction in granting the summary decree for defendant. And plaintiff claimed: the self-incrimination privilege not only in connection with the “Palm Club”, but also concerning the Monte Carlo Hotel, as the chancellor noted.
Finally, plaintiff contends that it was error not to hold his brother in contempt of court, proper application having been made, for failure to produce certain records. The order of the court on this matter was entered on March 10, 1952. Thus more than sixty days had expired before notice of appeal was filed, on January 21, 1953. Since we have treated the appeal as a petition for certiorari, this order is too old for review.
There is no error. Consequently the writ of certiorari is denied.
ROBERTS, C. J., and THOMAS and DREW, JJ., concur.