102 So.2d 35 (1958)
Abraham SHAFFRAN, Appellant,
v.
J.E. HOLNESS, Jr., also known as Joseph E. Holness, Jr., and ____ Holness, his wife, if married, and mildred S. Holness, a single woman, Appellees.
No. 44.
District Court of Appeal of Florida. Second District.
March 19, 1958.
Rehearing Denied April 25, 1958.
Seymour J. Simon, Miami, and Paty, Downey & Daves, West Palm Beach, for appellant.
*36 Holland, Bevis, McRae & Smith, Bartow, and Farish & Farish, West Palm Beach, for appellees.
PER CURIAM.
This was a mortgage foreclosure action in which the defense of usury interposed by the mortgagors in their counterclaim was sustained by the chancellor.
Appellant, who was the plaintiff in the lower court, sought foreclosure of a second mortgage; defendants answered denying all material allegations of the complaint and averred that the note secured by said mortgage was usurious and in violation of the usury laws.
Plaintiff and defendants moved for summary final decree and the court entered such decree for defendants. Final decree was thereafter entered; an appeal to the Supreme Court resulted in a reversal. See Shaffran v. Holness, Fla., 93 So.2d 94.
After the cause was remanded, the defendants filed an amended answer and counterclaim, setting up usury and alleging that defendants had been solicited to borrow money by an agent of plaintiff and that defendants, in the office of plaintiff's agent, had signed certain blank documents, including a mortgage and a note, which were later filled in by plaintiff's agent; that plaintiff by and through his agent had exacted a bonus, which together with interest in the note, commissions, discount, agents and other fees, amounted to an unlawful rate of interest. Defendants prayed that the mortgage and note be declared null and void, and that they have such other and further relief provided by law.
Plaintiff answered the counterclaim and denied that he had wilfully and knowingly exacted usurious interest as alleged, denied that the agent was his agent in the transaction, and averred that said agent was defendant's agent; that any sums collected by any person in the matter were done without his authority or knowledge, and that he never claimed more than 10% interest as provided by the note and mortgage.
Upon a trial of the issues the court entered a final decree for defendants, finding that United Mortgage Company was agent for plaintiff and that the commission received by them was chargeable to plaintiff as interest. The note and mortgage were cancelled by the decree and a judgment was entered for defendants as a penalty under the usury statutes.
For defendants and counterclaimants to prevail on their counterclaim charging usury and which prayed that the mortgage be cancelled, it was necessary for them to prove that United Mortgage Company, hereinafter referred to as United, was the agent of plaintiff, said agency being the basis of their counterclaim. The proof otherwise showed that defendants executed the note and mortgage, that plaintiff was the holder and owner thereof, and that the payments under the note were in default.
There was received in evidence a loan application and brokerage contract, by the terms of which defendants engaged United to act for them in procuring a second mortgage loan and agreed to pay United a certain sum for such services and the costs incident to the loan. While defendants contended that the printed form document was not completed when they executed it, they admitted they signed it. The printed portion thereof is clear and unambiguous in its meaning, and made United the agent of defendants. Shaffran v. Holness, supra; compare all Florida Surety Co. v. Coker, Fla., 88 So.2d 508. Other evidence upon the question of whether United was the agent of plaintiff or of defendants is summarized as follows.
Plaintiff was a resident of Miami Beach, and had lived in this country about four years, on a permanent visa, having been a citizen of Canada. The first he knew that the mortgage in question was available was when Neil Sawyer, an employee of United, of Miami, whom he had known about a month, called him *37 about it. Sawyer's brother, Murray, who was also connected with United, then took him up to West Palm Beach, where they met the defendant J.E. Holness, Jr. After looking at the property, plaintiff told this defendant he would get in touch with defendant's broker, meaning United and Neil Sawyer. They wanted to get a $20,000 second mortgage on the property  he was advised that the first mortgage was about $35,000  but when they contacted him again he told them he would go $15,000. Subsequently he was informed that Holness would accept $15,000, whereupon plaintiff instructed them to deliver all papers to his lawyer, Seymour Simon, of Miami. Simon instructed plaintiff several days later to bring him a check for $15,000. United insisted on a cashier's check. Simon delivered the note to plaintiff right away, and subsequently others papers including the mortgage and title insurance policy.
Plaintiff never had any interest in United, never engaged them to do anything for him, or paid them any money to do anything for him. Around the time of this transaction he purchased two other mortgages through United, which have been paid, and which were also handled through Simon, his attorney. He did not know what the arrangement was between Holness and United. He received no portion of the brokerage commission, or any other sums from United in connection with this transaction. He employed Simon to foreclose the mortgage and agreed to pay him a reasonable fee for his services. He bought mortgages from different brokers, which he required to be handled through Simon. He did not say anything to Holness, except that when Holness asked him what he had to say about it, he told him he would get in touch with Holness' broker.
He stated he knew James A. Baccus, that he was the lawyer for United. When Holness was behind in his payments, he called United, and evidently Baccus wrote Holness. There is more risk on second mortgages, and they offered him ten per cent interest. He did not recall hearing anyone tell the Holnesses that he was the person from whom they were going to borrow the money. He came up to West Palm Beach with Neil Sawyer and Baccus at the time he gave his deposition and, because he is not supposed to drive, he called Baccus to pick him up when he came up for the trial. United had first called him, about a month before this transaction, trying to sell him mortgages. They saw his name on a recorded mortgage. He told them he would drop in, like he went to other brokers. They offer him a mortgage and take him and show him the house.
Simon testified that he had known plaintiff, his client, for three years. His first knowledge of the transaction was when he was employed by plaintiff to close the second mortgage. The commitment letter was delivered to him by Baccus. He made an objection to a general exception of restrictions in the letter to Baccus, and also required a mechanic's lien affidavit. He closed the transaction at his office and received certain papers, which he delivered to plaintiff. He never had any connection with United, or represented them. His representation in any dealings that ever involved them had been in representing independent investors. Holness' payments were repeatedly delinquent, and he wrote him letters at plaintiff's request; he was representing plaintiff throughout the transaction. He received a fee in the case, by check from United. He handled the three loans about which plaintiff testified.
Murray Sawyer managed the West Palm Beach office of United, and stated that United "is a broker for the individual to try to help them to secure a mortgage on their property." It is a partnership composed of his brother and his sister-in-law, with the main office in Miami. People came into his office requesting mortgages, "that I should possibly help them out and try to secure in reference to getting someone for them to get a mortgage." After meeting Holness, he contacted the Miami office, giving details, and then called Holness *38 from Miami to tell him he was bringing a prospective investor to look at his property. He brought up plaintiff, whom he introduced as a prospective purchaser. Plaintiff remarked, after they had gone through the property, "I will let my broker know for you." In explaining his answer, he stated that plaintiff said "He would let his broker know * * *. Mr. Shaffran said he would let Mr. Holness know about it. In other words, he would speak to the United Mortgage Company and let them know whether he would give the sufficient money, the amount he requested for the mortgage. * * * The question I answered, sir, is that Mr. Shaffran would let the United Mortgage Company know. The United Mortgage Company is not his broker. He would lend money to Mr. Shaffran * * *. United Mortgage Company was Mr. Shaffran's agent for him to obtain the funds. * * * I meant to say that Mr. Shaffran would let the United Mortgage Company know whether he would lend the money for Mr. Holness. * * * When Mr. Shaffran left, he said he would let the United Mortgage Company know." The papers were prepared in Miami and he brought them up to his office. Then he had the defendants come to his office where he went over the matter with them, and they executed the note, mortgage and brokerage agreement, which were completely filled out. He told the defendant they were mortgage brokers.
Mrs. Sawyer testified that United were mortgage brokers whose duties were to obtain loans on behalf of borrowers. Plaintiff was not paid any part of the monies which he handed over to United. United had never been engaged by plaintiff to act for him in any capacity; they were engaged by the defendants. Plaintiff had never paid them any money for any service. Plaintiff knew nothing about any disbursements she made from her trust account; he only knew that they were agents for defendants and they were representing defendants.
Neil Sawyer related that the principal business of the partnership was mortgage brokerage. He called plaintiff, after hearing from Murray Sawyer, and asked him would he be willing to make a loan, who assented, if it was a good mortgage; the only thing done further, as far as plaintiff was concerned, was that an appointment was made for him to see the mortgagor. United refunded no money to plaintiff, and had never represented him as agent or otherwise. They kept a substantial list of potential investors, on which was plaintiff; they advertised for people who were interested in borrowing money and for investors. They presented the mortgage to the investor and if he desired to take it, they consummated the loan. He told Baccus that they should notify the defendant about the delinquent payment, because they still represented him; it was simpler than informing him of the same.
James A. Baccus, an attorney, testified he was employed by United, and that he was responsible for the legal work in connection with handling the mortgages and usually the closing of them, the processing procedures, and that he traveled from Miami to West Palm Beach and handled work in both places. The note and mortgage were prepared under his supervision in Miami; thereafter he delivered them to a title company for recording. Simon examined all the instruments preparatory to closing, who raised some objection to the commitment letter which was resolved. He pointed out to defendant on the closing statement that he was to make his payments to plaintiff. He voluntarily wrote the reminder letter to the defendants. He took the position he was representing the defendants. He also wrote the defendants to whom to make their payments because people don't remember.
Mrs. Holness, one of the defendant mortgagors, testified that the papers she signed were incomplete, and related the absence of oaths, notaries public, and absence of some of plaintiff's witnesses when she *39 signed. She assumed United was loaning the money; plaintiff's name was never mentioned to her. Baccus was not representing the defendants.
Holness, the other defendant mortgagor, stated that it was through his auditor that he came to know Neil Sawyer, an officer of United, defendant's auditor suggesting he would see about a loan company for him. He assumed that plaintiff was an appraiser when he looked at the house, and at this time he had no knowledge that anyone other than United was going to loan him the money. He denied that plaintiff told him at the house that Holness was to see Holness' broker. Plaintiff's name did not appear on the papers he signed at United's office, the papers were otherwise incomplete, no oaths of acknowledgment were taken, and some of plaintiff's witnesses were absent at the time of the transaction. He did not engage or employ Baccus to represent him. The first time he knew the mortgage payments were to be made to plaintiff was when he received a letter from United notifying him to make payments to plaintiff. Baccus never represented him; United was not acting as agent for them to secure a loan. Subsequently, he received a letter from Simon, representing plaintiff, calling his attention to the past due July and August payments, and stating that unless the default was rectified, plaintiff would have no alternative but to commence foreclosure.
Mr. Holness, Sr., father of one of the defendants, went to United's office with his son and his wife. Plaintiff's name was not on any of the papers, and the papers were in part blank. He had never seen plaintiff to his knowledge, or Baccus or Neil Sawyer prior to trial.
The remaining evidence had reference mainly to the circumstances surrounding the execution of the mortgage papers.
He who alleges usury "as a defense to avoid or to defeat an obligation to pay money must establish his charge by clear and satisfactory evidence." Wicker v. Trust Co. of Florida, 109 Fla. 411, 147 So. 586, 588. And "usury being a purely personal defense which may be availed of, or waived, at the election of the party aggrieved, it has no especial claims upon the indulgence and favor of the court, but must be disposed of upon the same principles and in the same manner as other defenses." Mackey v. Thompson, 153 Fla. 210, 14 So.2d 571, 573.
In Jones v. Hammock, 131 Fla. 321, 179 So. 674, 675, it was said, "This court has held that one of the requisites of a usurious transaction is that there must exist a corrupt intent to take more than the legal rate for the use of money loaned (Clark v. Grey, 101 Fla. 1058, 132 So. 832), and that usury is largely a matter of intent and is not fully determined by the fact of whether the lender actually gets more than the law permits, but whether there was a purpose in his mind to get more than legal interest for the use of his money (Benson v. First Trust & Savings Bank, 105 Fla. 135, 134 So. 493, 142 So. 887, 145 So. 182). Also to work a forfeiture under the statute the principal must knowingly or wilfully charge or accept more than the amount of interest prohibited. Chandler v. Kendrick, 108 Fla. 450, 146 So. 551, 552." Argintar v. Lydell, 132 Fla. 45, 180 So. 346.
One of the established principles governing the payment of commissions to agents in connection with loans is that "when one negotiates a loan through a third party, with a money lender, and the latter, bona fide, lends the money at a legal rate of interest, the contract is not made usurious merely by the fact that the intermediary charges the borrower with a heavy commission; the intermediary having no legal or established connection with the lender, as agent." 52 A.L.R.2d 708. At page 710 of this volume there also appears the statement that "it has generally been held or recognized that a lender cannot be charged with usury on account of any commission or bonus paid by the borrower to his own agent, or to an independent broker, for *40 services in negotiating or procuring the loan," citing authorities including Graham v. Fitts, 53 Fla. 1046, 43 So. 512; Mason v. Cunningham, 111 Fla. 200, 149 So. 331; and again, at page 713, "even though an agent may act for the lender in other matters, or in some respect in connection with the loan in question, yet if it is clear that in procuring the loan he was acting as the agent of the borrower, it has generally been held that a commission paid him for his services in the latter capacity will not constitute usury," citing Mason v. Cunningham, 111 Fla. 200, 149 So. 331.
A brokerage commission, as well as other expenses, constitutes legitimate expenses of a loan. Maher v. Kline, Fla., 74 So.2d 696. The burden was upon the borrowers to establish the existence of usury.
The agent was not a party to this action.
It is undisputed that plaintiff never had any interest in the agent, United, or ever engaged or paid them to do anything for him. He did not know what the arrangement was between defendants and the agent, and took no part in it; he received none of the brokerage commission, or any other sum from United in connection with the transaction.
Plaintiff controlled his own capital, fixing the amount he would loan; he decided for himself when he would part with it, and on what terms. His terms were lawful interest and security, which he inspected himself and found satisfactory; he transacted his own business. He required that the matter be closed through his attorney, through whom his money was transmitted. His attorney examined the papers in the transaction, made certain title requirements, attended the final closing, delivered the papers to plaintiff, and subsequently upon instructions wrote collection letters, and instituted suit. There was no proof that plaintiff did not part with the proceeds of the loan, or that he expected to or did benefit in any way except to the extent of the interest charged. It was not shown that United had any influence or control over plaintiff. He did not authorize them to make loans for him; they contacted him offering a mortgage which defendants had applied for to United. It was defendants who sought the agent's services.
The fact that employees transported plaintiff to West Palm Beach to examine the mortgage security and to attend hearings, or that he had two other transactions with United about the same time, or that he did not announce he might be the creditor, or that United prepared the papers, or that his funds eventually reached the defendants through United, or that one of their employees wrote a reminder letter, do not establish agency by clear and satisfactory evidence, in view of the entire record.
Defendants draw attention to certain statements of Murray Sawyer. We have carefully examined these particular statements, set out in full above, and confess we find them, in part, incoherent, meaningless and unintelligible, i.e., he testified that plaintiff stated "he would lend money to Mr. Shaffran"  patently, plaintiff was not borrowing money; further, "United Mortgage Company was Mr. Shaffran's agent for him to obtain the funds"  certainly United was not obtaining funds for plaintiff. We believe it is apparent, however, that the import of this witness' testimony is that plaintiff stated he would advise United what his disposition was in the matter.
Reluctantly we disturb the carefully considered decree of an able and conscientious chancellor. We bear in mind that his findings on the facts, where the evidence is heard by him and the witnesses are before him, should not lightly be set aside by an appellate court, unless shown to be clearly erroneous; yet where a decree is manifestly against the weight of the evidence, or contrary to, and unsupported by the legal effect of the evidence, then it becomes our duty to reverse such decree. *41 Brumick v. Morris, 131 Fla. 46, 178 So. 564.
A proper construction of the legal effect of the evidence and the weight of it show conclusively that United was the agent of the borrowers, the defendants herein. While the question of agency is primarily one for the trier of the facts, the evidence when analyzed is such that we believe only one inference can be drawn therefrom. It is therefore unnecessary to answer the remaining questions raised.
The cause is reversed, with directions to the lower court to dismiss the counterclaim and to enter a judgment of foreclosure, fixing a reasonable attorneys' fee for plaintiff's attorneys.
KANNER, C.J., ALLEN, J., and WARREN, LAMAR, Associate Judge, concur.