115 So.2d 592 (1959)
CUTRI ENTERPRISES, INC., a Pennsylvania corporation, Angelotti-Florida, Inc., a Florida corporation, Bahama Beach Corporation, P.A. Cutri, Donald R. Cutri, and Norman J. Cutri, Appellants,
v.
PAN AMERICAN BANK OF MIAMI, a Florida corporation, and J.I. Kislak Mortgage Corporation of Florida, a Florida corporation, Appellees.
No. 1029.
District Court of Appeal of Florida. Second District.
October 7, 1959.
Rehearing Denied November 23, 1959.
*593 George Whitehurst, Jr., Hall & Hedrick, Miami, for appellants.
William B. Roman, Miami, for appellee Pan American Bank of Miami.
H.N. Roth, Roth & Roth, and Charles V. Silliman, Orlando, for appellee J.I. Kislak Mortgage Corp. of Florida.
ALLEN, Chief Judge.
The plaintiffs filed a complaint against the defendants to set aside certain mortgages on the ground that the loan for which the mortgages were executed as security was usurious. The defendants filed an answer denying the charge, and one of the defendants, Kislak Mortgage Corporation, filed a counterclaim seeking a foreclosure of the delinquent mortgages. A severance as to the counterclaim was granted and the lower court tried the case upon the sole issue of whether or not the loan was usurious.
The trial of this issue took eight days and the record in this court includes 831 pages of testimony and over a thousand pages of documents, pleadings and depositions.
The lower court made the following findings of fact:
1. That the defendant J.I. Kislak Mortgage Corporation of Florida was the agent of Cutri Enterprises, Inc., and Angelotti-Florida, Inc., and not the agent of the defendant Pan American Bank of Miami in connection with the transactions which are the subject matter of this suit.
2. That the guarantee of J.I. Kislak Mortgage Corporation of Florida to Pan American Bank of Miami was a bona fide guarantee of the indebtedness of the plaintiffs to said bank.
3. That the monies that were to be paid to J.I. Kislak Mortgage Corporation of Florida by the plaintiffs were for services rendered in negotiating and guaranteeing the indebtedness of the plaintiffs, and there is absolutely no evidence that the Pan American Bank of Miami received or was to receive any part of the monies that were to be paid to J.I. Kislak Mortgage Corporation of Florida by the plaintiffs.
4. That with respect to the delay in closing the loan and disbursement of the proceeds by Pan American Bank of Miami, there is no evidence that the note was pre-dated or that the delay in closing and disbursement was contrived with any intent to circumvent the usury statute, nor can any usurious intent be reasonably imputed to the bank from any other aspect of the transaction. In view of the fact that the indebtedness was never paid by the plaintiffs, the bank did not have the opportunity to adjust this interest at the time of payment as was the bank's custom, and plaintiffs are entitled to an adjustment of $905.50 against their said indebtedness, which adjustment should be made by J.I. Kislak Mortgage Corporation of Florida and J.I. Kislak Agency, Inc., of Florida, the present owners and holders of said indebtedness.
5. That the Pan American Bank of Miami did not wilfully and knowingly reserve, charge or take a rate of interest greater than 15% per annum, and therefore no usury is involved in the notes or mortgages given by the plaintiffs to said Pan American Bank of Miami or to J.I. Kislak Mortgage Corporation of Florida.
*594 The following pertinent facts are deduced from the record:
Cutri Enterprises, on November 15, 1956, through its agent, Kislak Mortgage, obtained a loan for $100,000 from Pan American Bank, for which Cutri Enterprises executed a note to the bank secured by a mortgage on property belonging to Cutri Enterprises, known as Flora Beach Subdivision.
Cutri Enterprises, approximately a month later, applied for a $600,000 loan from the Pan American Bank, which the bank refused to grant. Subsequently, Kislak Mortgage Corporation negotiated with the Pan American Bank concerning this loan. On January 16, 1957, Cutri Enterprises, through its agent Kislak Mortgage, made another request for a $600,000 loan, advising the bank that it planned to use the money to pay off the $100,000 loan, to pay $134,000 on the Flora Beach Acreage, and to use the remainder in completing the construction of 52 houses in the Flora Beach Subdivision. Pan American advised Cutri that it would not make a $600,000 loan but would make a $400,000 loan, provided that Kislak Mortgage Corporation would guarantee the loan.
The president and another officer of Cutri Enterprises appeared at the office of the attorney for Pan American, which attorney was also representing Kislak Mortgage Corporation, on January 26, 1957. Cutri was presented with a commitment agreement which provided, in part, that the bank should be paid $18,000 as a commitment fee; that $12,000 would be the interest at 6% on the $400,000 loan; that the note to be executed would be for $430,000 due six months from date and secured by a mortgage on the Flora Beach Acreage which was to be purchased with the money. Cutri Enterprises was also requested to execute an $80,000 note secured by a second mortgage on the Flora Beach Acreage to Kislak Mortgage Corporation as their fee in procuring and acting as guarantor for Cutri on the $430,000 loan from Pan American Bank. Various documents were executed carrying out these proposals at this time.
February 14, 1957, a supplemental agreement was entered into between the parties which provided that $100,000 would be used to pay off a prior loan to the bank; that $134,000 would be paid to the vendors of Flora Beach Acreage; and that the remaining $166,000 should be either credited to the account of Cutri Enterprises or given to Kislak Mortgage Corporation to be disbursed as a construction fund for erection of the houses in Flora Beach Subdivision. All documents were finally completed on February 22, 1957, but thereafter, on or about February 27, 1957, the Pan American Bank made an additional loan of $60,000 since Cutri Enterprises needed additional funds with which to complete the 52 houses in Flora Beach Subdivision. Both this $60,000 loan and the $400,000 loan became due on July 29, 1957.
On March 5, 1957, Kislak Mortgage Corporation requested and received a memo from Cutri which provided that Cutri agreed to pay Kislak $9,200 for costs in negotiating the total $400,000 and $60,000 loans and to pay a brokerage and finder's fee of $80,000 as per the January 26, 1957 agreement, which memo was signed by both parties.
Cutri Enterprises contended below that Kislak Mortgage Corporation had, in fact, during this interim period, become the agent of Pan American Bank and that the $80,000 finder's and brokerage fee represented a bonus to the bank over and above the interest previously specified.
Cutri Enterprises also alleged that this conspiracy was precipitated by Kislak Mortgage and Pan American Bank, knowing that Cutri Enterprises desperately needed this loan to keep from going bankrupt. Kislak Mortgage Corporation, on the default of Cutri Enterprises, made good its guarantee of the loan and secured the $400,000 note and mortgage from Pan *595 American Bank. It should be noted that Kislak Mortgage Corporation not only acted as a broker in securing the loans in question for Cutri Enterprises and securing the loan from the bank, but also guaranteed the payment of the loan to the bank and, in fact, did pay the loan.
It will also be seen that Pam American Corporation contemplated a return of 15% on the monies loaned to Cutri Enterprises by adding the $18,000 commitment fee and the $12,000 interest fee for the contemplated six months period. So if the bank received any portion of the $80,000 to be paid Kislak Mortgage Corporation by Cutri Enterprises, the loan would be usurious.
The appellee asserts that the facts in this case come within the purview of this court's decision in Shaffran v. Holness, Fla.App. 1958, 102 So.2d 35. This is denied by the appellant who contends that the facts show that Kislak Mortgage Corporation, during the various negotiations, had become the agent of the Pan American Bank and not the agent of Cutri Enterprises.
If this court accepts the findings of fact made by the trial judge, there can be no doubt that Shaffran v. Holness, supra, is directly on point and the lower court must be affirmed.
We have studied this voluminous record and the briefs of counsel and conclude that the lower court had sufficient facts upon which he could and did make the findings of fact hereinabove summarized. The determination of questions of fact is a function of a trial court and an appellate court does not seek to re-evaluate the facts in opposition to the determination of the lower court. A trial judge has the same power that a jury has on disputed questions of fact. See Hill v. Beacham, 79 Fla. 430, 85 So. 147; Joyner v. Bernard, 148 Fla. 649, 6 So.2d 533; Goldfarb v. Robertson, Fla. 1955, 82 So.2d 504.
This court held in Shaffran v. Holness, supra, that usury, as a defense, must be proved by clear and satisfactory evidence; that the burden of proof is on the party asserting usury; that where one negotiates a loan through a third party with a money lender and the lender in good faith lends the money at a legal rate of interest, the contract is not made usurious merely by the fact that the intermediary charges the borrower with a heavy commission.
The lower court, in Shaffran v. Holness, supra, specifically found that the intermediary or broker was, in fact, the agent of the lender and in his decree cancelled the note and mortgage, while in the case now before this court, the lower court held that the broker was the agent of the borrower and not of the lender-bank, so the appellant has a far greater burden in upsetting the lower court's decree than if the lower court had found with it on the facts below.
In Shaffran v. Holness, supra [102 So.2d 35], we said:
"One of the established principles governing the payment of commissions to agents in connection with loans is that `when one negotiates a loan through a third party, with a money lender, and the latter, bona fide, lends the money at a legal rate of interest, the contract is not made usurious merely by the fact that the intermediary charges the borrower with a heavy commission; the intermediary having no legal or established connection with the lender, as agent.' 52 A.L.R.2d 708. At page 710 of this volume there also appears the statement that `it has generally been held or recognized that a lender cannot be charged with usury on account of any commission or bonus paid by the borrower to his own agent, or to an independent broker, for services in negotiating or procuring the loan,' citing authorities including *596 Graham v. Fitts, 53 Fla. 1046, 43 So. 512; Mason v. Cunningham, 111 Fla. 200, 149 So. 331; and again, at page 713, `even though an agent may act for the lender in other matters, or in some respect in connection with the loan in question, yet if it is clear that in procuring the loan he was acting as the agent of the borrower, it has generally been held that a commission paid him for his services in the latter capacity will not constitute usury,' citing Mason v. Cunningham, 111 Fla. 200, 149 So. 331."
In Maher v. Kline, Fla. 1954, 74 So.2d 696, the chancellor found that a sum of $1,500 which covered attorney's fees, a brokerage commission, and other incidental expenses in connection with a loan of $20,000, was for the legitimate expenses of the loan. The Florida Supreme Court, in disposing of the borrower's allegation of usury, held that the burden of proving the incorrectness of the chancellor's decree was on the borrower, and the borrower having failed to meet this burden, the chancellor would accordingly be affirmed.
We observe also an additional element in this case which was not involved in Shaffran v. Holness, supra. J.I. Kislak Mortgage Corporation guaranteed the loan of Cutri Enterprises to the Pan American Bank. The record shows, incidentally, that Kislak was required to pay the said loan, so the $80,000 fee charged by Kislak involved a guaranty as well as a brokerage for securing the loan.
In 55 Am.Jur., Usury, § 25, Sale or Loan of Credit, it is stated:
"It is well settled that the usury law is inapplicable to a transaction amounting merely to a loan or sale of credit, and a loan of money, to facilitate which a loan of credit is made, is not rendered usurious by the payment of, or agreement to pay, a sum exacted for the loan of the credit. However, it is difficult to lay down any general rule as to what amounts to a sale of credit as distinguished from a loan. Although the transaction must not be a mere cover for usury, and in the decision of this question the intent of the parties is important, generally speaking, consideration must be given to the particular facts in order to determine whether one of the parties to the transaction is to advance money, or whether the advance is to be made in the first instance by a third party. If, for instance, the transaction is one not contemplating the immediate advance of money by a party thereto, but merely a means of enabling one of the parties to procure funds from a third party, it is properly deemed a sale of credit, as regards the usury statutes, although eventually the party permitting the use of his credit has to advance the money before he is placed in funds or property by the one receiving the credit."
In Chakales v. Djiovanides, 161 Va. 48, 170 S.E. 848, the court held that where one acts in good faith and not for the purpose of concealing a usurious loan made by him, he may sell his credit to a borrower for a consideration, and to that end may endorse, guarantee, or become surety for the payment of a loan made to the borrower by third persons at the highest lawful rate of interest without rendering either the contract for the sale of his credit or the loan made by the third party usurious.
The appellants state the following points of law in their brief:
"(a) Did the appellee, Pan American Bank of Miami, and Kislak exact a usurious rate of interest from the appellant-borrowers by reason of a conspiracy existing between the lender-bank and the appellee, J.I. Kislak Mortgage Corporation, initially the agent of the appellants, by requiring a charge of $119,200.00 *597 for a loan of $400,000 for six months? (59.6% on an annual basis.)
"(b) If there was no usury, was there an unconscionable and inequitable contract forced by appellees upon the borrowers to pay $89,200.00 for the services of and guarantee by Kislak for obtaining the $400,000 loan from the lender?"
The appellee, Pan American Bank of Miami, states in its brief:
"We do not agree with the statement of the points involved as stated by the Appellant inasmuch as the same is based upon a false premise. We believe that the sole point of law involved is:
"May compensation paid or promised to an agent of a borrower for obtaining a loan for the borrower be added on to legal interest charged by the lender so as to make the loan usurious where the lender does not receive and had no agreement or arrangement to receive any part of the compensation paid or to be paid to the agent of the borrower."
We shall accept the question as stated by the appellee instead of question (a) stated by the appellant, as clearly the appellant sets forth its contention of the facts instead of a point of law.
The appellee contends that the appellant has abandoned in his brief the theory under which the case was tried in the lower court.
The appellant in his reply brief quotes from this court's decision in the case of Robbins v. Grace, Fla.App. 1958, 103 So.2d 658, to show that a party is not bound by the allegations set out in his pleadings but may depart therefrom in the actual trial of the case. The decision of this court in the Robbins v. Grace case, supra, was not as broad as appellant contends, but the court does not need to say anything further about the appellant's second question as we have examined the record with reference to point (b) of the appellant and conclude that the findings of fact and the determination of the validity of the loan in question would necessarily require a negative answer to question (b) of the appellant.
Affirmed.
KANNER, J., and GERALD, LYNN, Associate Judge, concur.