ALLEN, Acting Chief Judge.
Appellant, defendant in the lower court, is appealing from a summary final decree of foreclosure entered in favor of plaintiff-appellees.
The decree appealed contains 18 paragraphs and various rulings incorporated in the se feral paragraphs have been assigned as error. However, the arguments in the respective briefs go only to one question, to-wit: the correctness vel non of paragraph 5 of said decree wherein the chancellor held that no genuine issue of fact existed and that plaintiffs were entitled to a final decree of foreclosure as a matter of law. One of the findings in said paragraph 5 was that the interest charged on the mortgage loan was lawful. This finding forms the roots of appellant’s contentions on appeal since the material issue of fact purportedly unresolved by the chancellor surrounds the existence, if any, of usurious interest charged for the mortgage loan.
The foreclosure suit was filed against Florie Builders, Inc., as mortgagor and maker of the mortgage note and M. H. Rosenhouse and wife as sureties on said note by endorsement. The final decree was entered against all parties defendant but only M. H. Rosenhouse has appealed.
On December 12, 1957, defendant, Florie Builders, Inc., executed a note for $12,500, payable in one year with interest of $1600 payable at the rate of $400 quarter-annually, to Samuel Kaplan to evidence the latter’s loan to said corporation. Said note was endorsed by the appellant, an attorney, and was secured by a 25 acre tract of vacant land in Brevard County. The corporation had been in existence since 1954 and had owned the property mortgaged since May 6, 1957. The corporation was owned by members of appellant’s family and its principal officers were appellant’s brother and law partner, D. L. Rosenhouse. and the latter’s wife.
Appellant approached Flerbert E. Kaufman, attorney for appellees, in November of 1957 in regard to obtaining for the corporation a mortgage loan on the Brevard County property. Kaufman proposed the loan to a client, Samuel Kaplan, who agreed to loan the corporation $12,500. The interest rate as described above, $1600 for one year, is approximately 13'% per annum. Kaplan forwarded $12,500 to Kaufman to consummate the loan. After satisfaction of an existing mortgage previously given by the corporation, and obtaining a mortgagee’s title insurance policy, the transaction was closed by Kaufman upon the execution of the note and mortgage by the corporation and endorsement of the note by appellant. The corporation received from Kaufman $11,741.50, being the proceeds of the $12,500 loan less a $750 fee to Kaufman and $8.50 referred to as “certain minor adjustments.”
*356 On December 20, 1957, four days after the closing, the corporation conveyed the property, subject to the mortgage, to appellant outright.
At maturity the note was not paid and on December 16, 1958, a written extension agreement was entered into between the corporation as maker and Samuel Kaplan as payee, to which appellant consented by endorsement, providing for extension of maturity to December 15, 1959, and for payments on account of principal and interest at the rate of 13% per annum.
On January 16, 1959, Samuel Kaplan assigned the note and mortgage as extended to appellees, his children. Appellees purportedly paid their father $12,000, as the unpaid principal balance, for the assignment although appellant denies that such payment was made. The balance due was not paid on the extended maturity date and a further written extension agreement was made between appellees- and the corporation and endorsed by appellant, extending maturity for unpaid principal to December 1, 1960, with interest at 13%. Payment was not made as agreed and after demand the instant foreclosure suit was filed.
Affidavits of Kaufman and the Kaplans were filed in support of appellees’ motion for summary decree. The only affidavit in opposition to the motion was made by appellant. 'In this affidavit, appellant asserted, inter alia, that he was the actual borrower and that the loan was nominally made to the corporation to circumvent the usury statutes which prohibit charging an individual interest in excess of 10 per cent per annum. See F.S. Sections 687.02 and 687.-03, F.S.A. Also appearing in the record are depositions of the Kaplans taken in New York by appellant with Kaufman in attendance and cross-examining.
Though the exhibits on file show the borrower to be a corporation, appellant contends that the depositions and affidavits on file raise a question of fact as to whether the borrower was a natural person, namely appellant. He also contends that, even if the borrower be deemed to have been a corporation, interest in excess of the 15 per cent per annum permitted to be charged a corporation by F.S. Sections 687.02 and 687.03, F.S.A., was charged in this case because of the $750 paid to Kaufman. In this regard, appellant states that a material issue of fact remains unresolved concerning the status of Kaufman in the transaction involved. Appellant asserts that Kaufman was the agent for the lender thus rendering the $750 paid to him additional interest. In the alternative, appellant claims that of the $750 received by Kaufman, at least $375 was remitted by him to the lender, Kaplan. If either assertion is true, the interest charged the corporate borrower would have been in excess of 15 per cent and hence usurious.
The record totally fails to support appellant’s contention that the loan was not made to a corporation or that a material issue of fact exists as to this contention. Rather, the record affirms the conclusion that all parties to the loan conceived of it as being made to a corporation. Even though, four days after the loan was closed, the mortgaged premises were conveyed by the corporation to appellant individually “subject to all mortgages, real estate taxes, liens and encumbrances as appear of record” (emphasis supplied), there is no showing that the lender, Samuel Kaplan, could be deemed to have expected or to have known that such a transfer would take place. Moreover, the numerous extensions on the loan which were granted, with apparent amicability, were entered into between the mortgagees and the corporation. The fact that appellant, as endorser on the note and extensions thereto, made all payments drawn on his “special account” is of no independent significance. The rule that the corporate shell to cloak a loan to an individual borrower will not be allowed to defeat the usury laws, enunciated in Gilbert v. Doris R. Corporation, Fla.App. 1959, 111 So.2d 682, cited by appellant, does not apply to the instant case. In Gilbert *357 the chancellor found by a preponderance of the evidence that a corporation had been formed at the insistence of the lenders as a prerequisite to their making of the loan and as a sham contrivance to defeat the usury statutes applicable to loans to individuals. In the instant case, the corporate borrower had been in existence for three years and had owned the mortgaged property for six months prior to the time appellant sought to obtain a loan on said property.
After the hearing on the motion for summary decree, the chancellor, at appellant’s request, deferred ruling until appellant should have had an opportunity to take the depositions of appellees and Samuel Kaplan in Suffolk County, New York. In his affidavit in opposition to appellees’ motion for summary decree, appellant Rosen-house had stated that by taking said depositions of the Kaplans and examining their "banks and records” he would be able to reveal that interest in excess of 15'% per annum had been exacted. The depositions thereafter taken as well as the documentary exhibits on file appear to contain no such revelation.
In his direct examination of Samuel Kaplan, Mr. Rosenhouse elicited inconclusive testimony attempting to prove that Mr. Kaplan knew Mr. Rosenhouse prior to the transaction at issue and that Mr. Kap-lan knew at that time that Mr. Rosenhouse was interested in the 25 acres on which the instant mortgage foreclosure was instituted, as an individual. Construing this testimony in a light most favorable to Mr. Rosenhouse, it is nevertheless immaterial because he fails to otherwise establish any doubt that the loan was not in fact made to a corporation.
Mr. Rosenhouse also elicited extensive testimony attempting to show that plaintiffs, Bernard Kaplan, Theodore Kap-lan and Ruth Kimbrig, had not paid their father, Samuel Kaplan, for the assignment of the mortgage he executed to them. The testimony on this point seems to support the conclusion that consideration in the form of cancellation of a pre-existing debt did in fact pass from plaintiffs to Samuel Kaplan. Even if it does not, however, the question of consideration for said assignment is irrelevant to the issues in this case. Moreover, no predicate appears to have been laid by Rosenhouse to show the relevance of consideration vel non having been given for the assignment.
As appears from the facts, as in effect stipulated, the loan was $12,500 with 13'% interest ($1600) being charged therefor. Of the $12,500 received by the corporate borrower, $750 was withheld by Kaufman, apparently for both his legal services in closing the loan and his services as a loan broker.
In taking the depositions, Mr. Rosenhouse attempted to show that at least $375 of the $750 was remitted to Samuel Kaplan by Kaufman so as to place the interest charged on the $12,500 at $1975 or in excess of the 15% permitted by law to be charged a corporation. However, there is not one shred of positive testimony or any exhibits to show that Kaplan, the lender, received any of the $750 paid Kaufman for his services in connection with the loan. Nor was any testimony elicited that Kaufman was an agent of Kaplan so as to render the legal effect of monies paid to Kaufman out of the loan proceeds as the equivalent of money paid to Kaplan, the lender. To the contrary, the testimony shows that Kaufman was at most a loan broker, whose services in this regard were to be paid for by the borrower. The testimony also shows that Kaufman functioned as an attorney to a considerable extent in the loan transaction at issue.
Samuel Kaplan, on cross examination by Kaufman, testified. that he had no knowledge as to what Kaufman charged Rosen-house for arranging the loan and that he (Kaplan) never received a penny of any amount charged Rosenhouse by Kaufman.
*358 As to Kaufman’s dual status as attorney and loan broker, Samuel Kaplan testified that he paid Kaufman nothing and that “Always the fellow that needs the money, he pays for it.” By this testimony, Kaplan was referring to all loan transactions in which he participated as lender. He was in effect saying that any loan brokerage or attorney’s fees in connection with loans that he makes are paid for by the borrower.
The only relationships between Kaufman and Kaplan that Rosenhouse was able to establish were that of (1) attorney-client generally and (2) a joint ownership interest in a separate and distinct (also prior) mortgage for $48,000 referred to in the depositions as the “Sperling mortgage.” No testimony -was elicited to show a joint venture relationship existing between Kap-lan and Kaufman on the mortgage loan in question.
The only statements to the contrary are bare assertions made by Rosenhouse in his affidavit prior to the taking of the depositions. In this affidavit, Rosenhouse asserted (more accurately alleged) that there was a relationship between Kaufman and Kap-lan which renders the $750 paid to Kaufman by Rosenhouse an exaction of usurious interest. It is true that this question is still a disputed issue of fact if only the various affidavits in support of and in opposition to the motion for summary decree are looked to. It is also true that Rosen-house indicated in his affidavit that he intended to elicit proof of his assertions contained therein upon the taking of the aforementioned depositions. These depositions, however, totally fail to support his assertions and it would thus appear that the controverted issues in the prior-made affidavits were rendered paper or sham issues after the depositions were taken.
Having these depositions before him, which depositions quieted any controverted issues of fact raised by the affidavits made earlier, the lower court correctly determined that there were no material issues of fact pertaining to the defense of usury, and that the interest rate charged by plaintiffs’ assignor on the mortgage loan was in fact within the legal rate permitted to be charged a corporation.
As we held in Shaffran v. Holness, Fla.App.1958, 102 So.2d 35 at 39:
“One of the established principles governing the payment of commissions to agents in connection with loans is that ‘when one negotiates a loan through a third party, with a money lender, and the latter, bona fide, lends the money at a legal rate of interest, the contract is not made usurious merely by the fact that the intermediary charges the borrower with a heavy commission; the intermediary having no legal or established connection with the lender, as agent.’ 52 A.L.R.2d 708. At page 710 of this volume there also appears the statement that ‘it has generally been held or recognized that a lender cannot be charged with usury on account of any commission or bonus paid by the borrower to his own agent, or to an independent broker, for services in negotiating or procuring the loan,’ citing authorities including Graham v. Fitts, 53 Fla. 1046, 43 So. 512; Mason v. Cunningham, 111 Fla. 200, 149 So. 331; and again, at page 713, ‘even though an agent may act for the lender in other matters, or in some respect in connection with the loam, in question, yet if it is clear that in procuring the loan he was acting as the agent of the borrower, it has generally been held that a commission paid him for his services in the latter capacity will not constitute usury,’ citing Mason v. Cunningham, 111 Fla. 200, 149 So. 331.” (Emphasis supplied.)
In this respect, the chancellor- was well within his discretion in piercing the paper issues and ruling that there was no genuine issue as to any material fact and that ap-pellees were entitled to a decree as a matter of law. See Lewis v. Lewis, Fla.1954, 73 So.2d 72.
*359 Appellees’ petition for the allowance of attorney’s fees in connection with this appeal is denied. It is noted that the order fixing the terms and conditions of the super-sedeas bond and the bond itself have already made provision for attorney’s fees which may be incurred by appellees in this appeal. See Ritter v. Bentley, Fla.1955, 78 So.2d 573.
The decree appealed from is affirmed.
WHITE, J., and WILLIS, BEN C., Associate Judge, concur.